DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**KENDRICK JOSEPH,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D14-2678

[December 3, 2014]

Petition for writ of certiorari to the Seventeenth Judicial Circuit, Broward County; Ari Abraham Porth, Judge; L.T. Case Nos. 13-5141CF10A, 13-5142CF10A, 13-5788CF10A, 13-5789CF10A and 13-5790CF10A.

Howard Finkelstein, Public Defender, and Diane M. Cuddihy, Chief Assistant Public Defender, Fort Lauderdale, for petitioner.

Pamela Jo Bondi, Attorney General, Tallahassee, and Allen R. Geesey, Assistant Attorney General, West Palm Beach, for respondent.

GROSS, J.

Kendrick Joseph petitions for a writ of certiorari to quash June 19, 2014 orders denying his motion to dismiss in five pending felony cases. He contends that he is entitled to dismissals pursuant to section 916.303(1), Florida Statutes (2013), which provides:

> The charges against any defendant found to be incompetent to proceed *due to intellectual disability or autism* shall be dismissed without prejudice to the state if the defendant remains incompetent to proceed within a reasonable time after such determination, *not to exceed 2 years*, unless the court in its order specifies its reasons for believing that the defendant will become competent to proceed within the foreseeable future and specifies the time within which the defendant is expected to become competent to proceed. The

charges may be refiled by the state if the defendant is declared competent to proceed in the future.

(Emphasis added).  Section 916.106(13) defines "intellectual disability" as having "the same meaning as in s. 393.063."  Section 393.063(21) defines "intellectual disability" as follows:

(21) "Intellectual disability" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior which manifests before the age of 18 and can reasonably be expected to continue indefinitely. For the purposes of this definition, the term:

  (a) "Adaptive behavior" means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community.

  (b) "Significantly subaverage general intellectual functioning" means performance that is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the agency.

For purposes of the application of the criminal laws and procedural rules of this state to matters relating to pretrial, trial, sentencing, and any matters relating to the imposition and execution of the death penalty, the terms "intellectual disability" or "intellectually disabled" are interchangeable with and have the same meaning as the terms "mental retardation" or "retardation" and "mentally retarded" as defined in this section before July 1, 2013.

None of the evaluations of the defendant have ever found Joseph to have met the statutory definition of "intellectual disability."  Some recent evaluations found that Joseph suffered from a mental illness; however, the statutory definition of "mental illness" "does not apply to defendants who have only an intellectual disability."  § 916.106(14), Fla. Stat. (2013). Section 916.145, Florida Statutes (2013), provides for the dismissal of charges after *five* years where incompetency is due to mental illness.

Joseph has not demonstrated that he is statutorily entitled to dismissals at this time.  The petition for writ of certiorari is denied.

MAY, J., concurs.

WARNER, J., concurs specially with opinion.

WARNER, J., concurring specially.

Since 2009 appellant has been evaluated nearly every six months to determine whether he was competent to proceed with juvenile and now adult charges. I count thirteen evaluations. Each time, save one (in 2011), he was determined not to be competent. Almost all of the examiners found that he had significant developmental and learning disabilities. None diagnosed him with a mental illness, although a couple of the reports opine that he might have a psychotic disorder. Several others said that he did not have a mental illness. Some reports suggested ruling out retardation. Others did not mention it. Most likely, the reason that the reports don't use the magic words "intellectual disability" is because these don't appear in the statute until 2013, when an amendment changed "mental retardation or autism" to "intellectual disability or autism" in section 916.303(1), Florida Statutes (2013).

No testing was done of any significance to determine his intellectual capacity until 2014. Almost all of the reports suggest treatment, including residential treatment, to restore competency, but either the state has not provided it or it has been unsuccessful. I note that in 2009 the evaluators thought that with educational and behavioral training the chances of competency restoration were good, but more recent reports state that his prognosis to be restored to competency is "guarded."

I do not pretend to understand the diagnoses in the psychological reports sufficiently to determine whether the learning disabilities would constitute "mental retardation" under the prior statute or "intellectual disability" under the present statute. Therefore, I cannot disagree with the conclusion of the majority opinion that the record does not support the statutory requirements for dismissal of the charges. If, however, the appellant can show through the testimony or affidavits of the prior evaluators that their reports meant that he was intellectually disabled within the meaning of the statute, then he should be able to move again for dismissal of the charges.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***

- 3 -